[No. C057324. Third Dist. Aug. 31, 2009.]

M.P., Plaintiff and Appellant, v.
CITY OF SACRAMENTO, Defendant and Respondent.

COUNSEL

Law Office of Michael J. Kinane and Michael J. Kinane for Plaintiff and Appellant.

Eileen M. Teichert, City Attorney, and Chance L. Trimm, Deputy City Attorney, for Defendant and Respondent.

OPINION

**SCOTLAND, P. J.**—Not all of the opinions of the California Supreme Court have stood the test of time.[1] So it may be with respect to an issue raised in this case.

---

[1] On a number of occasions over the years, the California Supreme Court has overruled its own precedent. The latest example is its decision in *People v. Farley* (2009) 46 Cal.4th 1053 [96 Cal.Rptr.3d 191, 210 P.3d 361], which held the court had erred in *People v. Wilson* (1969) 1

During the Porn Star Costume Ball at a Sacramento hotel in 2004, a Sacramento Fire Department captain allegedly allowed firefighters to attend the event and even to drive a firetruck there and use it to "pick up" women.

The situation led to a lawsuit and this appeal, which presents the question whether the City of Sacramento can be vicariously liable for nonconsensual sexual assaults alleged to have been committed in the firetruck by two firefighters (one of whom was off duty at the time) against a woman (a photographer at the event) who had accepted their invitation to take pictures of them on the firetruck.

■ At issue is the California Supreme Court's decision in *Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202 [285 Cal.Rptr. 99, 814 P.2d 1341] (hereafter *Mary M.*), which held a public entity that employs a police officer can be vicariously liable for a rape committed by the officer against a woman he detained while on duty. The decision was a departure from the ordinary rule that an employee who commits a sex crime while on duty has not acted within the scope of employment and, thus, the employer is not vicariously liable for the harm to the victim because the crime has no causal nexus to the employee's work.

It is questionable whether the holding in *Mary M.* is still viable. Indeed, the Chief Justice of California has described it as an "aberrant holding" that was "wrongly decided" and should be "overrule[d]." (*Farmers Ins. Group v. County of Santa Clara* (1995) 11 Cal.4th 992, 1020 [47 Cal.Rptr.2d 478, 906 P.2d 440] (conc. opn. of George, J.); see also *Lisa M. v. Henry Mayo Newhall Memorial Hospital* (1995) 12 Cal.4th 291, 306 [48 Cal.Rptr.2d 510, 907 P.2d 358] (conc. opn. of George, J.).) Nonetheless, it remains the rule of law unless a majority of the California Supreme Court decides otherwise.

■ We reject plaintiff's effort to apply *Mary M.* to the facts of this case. For reasons that follow, we conclude the *Mary M.* holding that a public employer of a police officer may be vicariously liable for a sex crime committed by the officer against a person detained by the officer while on duty is, at best, limited to such acts by an on-duty police officer and does not extend to any other form of employment, including firefighting. Thus, as a matter of law, the alleged sexual assault by firefighters in this case was not conduct within in the scope of their employment and cannot support a finding that their employer, the City of Sacramento, is vicariously liable for the harm. The trial court so ruled—a decision we now uphold. Because plaintiff's other efforts to resurrect her lawsuit against the employer lack merit, we shall affirm the judgment entered in favor of the City of Sacramento.

---

Cal.3d 431 [82 Cal.Rptr. 494, 462 P.2d 22], by extending the merger doctrine (see *People v. Ireland* (1969) 70 Cal.2d 522 [75 Cal.Rptr. 188, 450 P.2d 580]) to first degree felony murder.

## THE LAWSUIT

Plaintiff sued the City of Sacramento (the City), its fire department, and two firefighters, Tom Mitchell and Scott Singleton, whom she accused of sexually assaulting her. Her complaint alleged the following:

Plaintiff, a 24-year-old woman working as a photographer at the Porn Star Costume Ball, "came across a crew of firefighters" who "had driven their trucks to the event." She recognized Singleton and, "believing that she could trust the firefighters," she "began to hang out" with them. "Some of the firefighters were drinking and many of them were on-duty," including Mitchell. "There was a captain accompanying the crew who watched the firefighters drink and flirt with many women," including plaintiff.

As plaintiff began photographing them, one of the firefighters "invited her to take photographs of him and another firefighter on the fire truck." She asked an off-duty firefighter to accompany her and followed them to the truck. Singleton (who was off duty), Mitchell (who was on duty), and plaintiff got into the firetruck. Plaintiff "found herself in a position" between Mitchell and Singleton, who were "blocking" the doors. She "began to panic and freeze in her state of fear." "Mitchell instructed Singleton to kiss [plaintiff's] breast while Mitchell kissed the other breast" and "stuck his finger in [her] vagina." She protested to no avail. Mitchell then put his hand on the back of her head, pulled it toward him, and forced his erect penis into her mouth. When someone walking by said, "Firemen have all the luck," Mitchell responded, "Yeah we do," "referring to [p]laintiff's legs wrapped around him with the appearance from outside the truck that Mitchell was actually inside of [her]." While Mitchell's attention was "diverted" by a person who approached the firetruck, plaintiff "took the opportunity to escape."

The complaint further alleged: The City and its fire department had policies permitting firefighters "to take fire trucks and engine trucks to bars and parties, and **with captains present,** pick up on women and take women on their fire trucks." The employees "took advantage of their status as firefighters and the post 9/11 public sentiment perception that firefighters are 'heroes' " and "abused their authority by picking up women and drinking on the job." The practice had "been in place for years" and was known to the City and its fire department. "These internal policies and practices . . . put in motion a chain of events wherein [Mitchell] and other firefighters felt that it was permissible to engage in conduct such as that which led to [plaintiff being] sexually assaulted." Mitchell's conduct "was ratified and condoned by [the City and its fire department] by the presence of his captain[,] who witnessed and allowed his crew to go to the Porn Star Costume Ball," to "drink while on duty," and to "pick[] up on women . . . ."

The complaint set forth six causes of action against the City, its fire department, and firefighters Mitchell and Singleton. However, the fire department was later dismissed as a party, and the third cause of action against the City was also dismissed.

The first cause of action (which was labeled negligent hiring, supervision, and retention) alleged: The City knew or reasonably should have known Singleton and Mitchell were incompetent and unfit for duty and posed an undue risk to others. Despite this knowledge, the City retained Singleton and Mitchell in conscious disregard of the rights of plaintiff and other females. By reinstating the firefighters "despite such egregious conduct" and the "undue risk" they pose to "persons such as [p]laintiff," the City "ratified" the firefighters' conduct.

The second cause of action (for sexual assault and battery), the fourth cause of action (for intentional infliction of emotional distress), and the fifth cause of action (for negligent infliction of emotional distress) were based on the acts of sexual assault.

The sixth cause of action (for defamation) was based on (1) Mitchell's alleged reply, "Yeah we do," when a bystander commented that firefighters "have all the luck," and (2) plaintiff's claim that, in press coverage of the incident, the City "portrayed [her] to the public in poor and false fashion by omitting that [she] was at the event as a photographer . . . ."

The complaint sought damages, punitive damages, attorney fees, and costs.

## MOTIONS IN THE TRIAL COURT

On April 24, 2007, the City moved for summary adjudication in its favor, contending there were no triable issues of material fact as to any of the causes of action. There was a factual dispute whether the sex acts were consensual; however, for purposes of its motion, the City accepted as true plaintiff's claim of sexual assault.

The City asserted that (1) as a matter of law, it is not vicariously liable for a sexual assault allegedly committed during a social event at a hotel by an off-duty firefighter who was not in uniform (Singleton) and that an alleged sexual assault committed at such an event by an on-duty firefighter (Mitchell) is outside the scope of employment, as a matter of law, and thus not conduct for which the employer is vicariously liable; (2) undisputed facts establish the City did not ratify the misconduct; (3) undisputed facts demonstrate the City had no actual knowledge, or reason to know, of facts that would state a claim for negligent hiring or supervision; and (4) there "is no claim for defamation

as a matter of law based on the failure to publish information or statements regarding plaintiff to a third party."

In support of its motion, the City submitted the declaration of Leo Baustian, an assistant fire chief and the fire department's human resources division chief. He stated: Daily staffing reports show that, at the time of the alleged sexual assaults, Singleton was off duty and Mitchell was on duty. Before Mitchell was hired, he was fingerprinted for a criminal background check, which revealed he did not have a criminal record. Three letters received by the department recommended that Mitchell be hired. One letter commented favorably on his " 'strong character and maturity.' " During the almost 10 years from the date Mitchell was hired, there were no reports or complaints that he had engaged in any improper sexual acts. "Sexual assaults of females while on duty [are] obviously not stated in any job description for firefighter/paramedic," such as Singleton and Mitchell. After the alleged incident on July 2, 2004, Mitchell was placed on administrative leave, and an investigation was commenced. On July 15, 2004, Mitchell submitted his resignation, and no further disciplinary action was taken.

Four days prior to the City's motion, plaintiff's attorney sought an order to be relieved as her counsel on the grounds that (1) there was an "irreparable breakdown of the [attorney-client] relationship," (2) plaintiff was "given multiple opportunities and time to seek new counsel and to have a substitution of attorney completed," but (3) she had not done so. Plaintiff did not oppose the motion, and the court granted it on May 21, 2007.

The court's order noted that a hearing on the City's motion for summary adjudication was scheduled on Monday, August 6, 2007.

On July 16, 2007, plaintiff retained new counsel. Plaintiff's opposition to the City's motion was due on July 23, 2007.

Plaintiff's new counsel did not file an opposition to the City's motion for summary adjudication. Instead, on Thursday, August 2, 2007, two court days before the hearing on the motion, plaintiff's counsel filed an ex parte request to continue the hearing.

## THE TRIAL COURT'S RULINGS

A hearing on plaintiff's motion for a continuance and on the City's motion for summary adjudication was held on August 6, 2007. The court's tentative ruling was to deny the continuance because (1) the motion did not comply with local rules; (2) plaintiff was not diligent in seeking new counsel; and (3) having failed to file an opposition to the City's motion, plaintiff's new

counsel delayed "almost three weeks" in seeking a continuance of the hearing. As to the City's unopposed motion for summary adjudication, the court's tentative ruling was to grant the motion because (1) plaintiff failed to demonstrate a triable issue of material fact as to the claim of negligent hiring, supervision, and retention; (2) the sexual assault was not within the scope of the firefighters' employment; and (3) the defamation claim could not be founded on an alleged omission. At the conclusion of the hearing, the court took the matters under submission.

On August 7, 2007, the court issued an order that "affirmed" its tentative rulings and further explained why it denied plaintiff's continuance motion.

Ten days later, on August 17, 2007, plaintiff filed a motion for reconsideration (Code Civ. Proc., § 1008) or for relief pursuant to Code of Civil Procedure section 473.

On August 21, 2007, without ruling on the pending motion, the court issued its formal order on the rulings it made on August 7; and on August 24, 2007, the court entered judgment in favor of the City and ordered plaintiff to pay the City's costs (later determined to be $3,499.09).

On September 24, 2007, the court denied plaintiff's motion for reconsideration or for relief pursuant to Code of Civil Procedure section 473.

## THE APPEAL

On appeal, plaintiff contends the trial court abused its discretion in denying her motion for a continuance; the court erred in entering summary judgment in the City's favor; new facts and circumstances supported plaintiff's motion for reconsideration; and the court should have granted relief pursuant to Code of Civil Procedure section 473.

## DISCUSSION

"Except as otherwise provided by statute," a "public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." (Gov. Code, § 815, subd. (a).) Subdivision (a) of Government Code section 815.2 sets forth an exception to this rule: "A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative." Simply stated, a public entity employer "is vicariously liable

for the torts of its employees committed within the scope of the employment." (*Lisa M. v. Henry Mayo Newhall Memorial Hospital, supra*, 12 Cal.4th at p. 296 (hereafter *Lisa M.*).)

Such vicarious liability—a "departure from the general tort principle that liability is based on fault"—is a " ' "rule of policy, a deliberate allocation of a risk" ' " when it would be unjust for an employer to disclaim any responsibility for injuries "occurring in the course of its characteristic activities." (*Mary M., supra*, 54 Cal.3d at p. 208.) The California Supreme Court has articulated three reasons for applying the principle of vicarious liability: "(1) to prevent recurrence of the tortious conduct; (2) to give greater assurance of compensation for the victim; and (3) to ensure that the victim's losses will be equitably borne by those who benefit from the enterprise that gave rise to the injury." (*Id.* at p. 209.)

An employer's vicarious liability is not limited to an employee's negligent acts or omissions. A willful, malicious, and even criminal act may fall within the scope of employment, but only if the act has "a causal nexus to the employee's work." (*Lisa M., supra*, 12 Cal.4th at p. 297.) For a causal nexus to exist, the risk of tortious injury must be "foreseeable" in the sense it is " ' "inherent in the working environment" ' " or " 'typical of or broadly incidental to' " the employer's enterprise (*id.* at pp. 298, 300). In this sense, "foreseeability 'merely means that in the context of the particular enterprise[,] an employee's [tortious] conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business.' " (*Id.* at p. 299.)

█ "Ordinarily, the determination whether an employee has acted within the scope of employment presents a question of fact; it becomes a question of law, however, when 'the facts are undisputed and no conflicting inferences are possible.' [Citation.] In some cases, the relationship between an employee's work and wrongful conduct is so attenuated that a jury could not reasonably conclude that the act was within the scope of employment." (*Mary M., supra*, 54 Cal.3d at p. 213.)

In *Mary M.*, the California Supreme Court held that a police officer's act of raping a woman whom he detained while on duty "was not so divorced from his work that, as a matter of law, it was outside the scope of employment." (*Mary M., supra*, 54 Cal.3d at p. 214.) This is so, the court reasoned, because "[t]he danger that an officer will commit a sexual assault while on duty arises from the considerable authority and control inherent in the responsibilities of an officer in enforcing the law." (*Id.* at p. 218.) "[S]ociety has granted police officers extraordinary power and authority over its citizenry. An officer who detains an individual is acting as the official representative of the state, with

all of its coercive power." (*Id.* at p. 216.) Officers "are given the authority to detain and to arrest and, when necessary, to use deadly force. As visible symbols of that formidable power, an officer is furnished a distinctively marked car, a uniform, a badge, and a gun. Those who challenge an officer's actions do so at their peril; anyone who resists an officer's proper exercise of authority or who obstructs the performance of an officer's duties is subject to criminal prosecution." (*Id.* at p. 206.) "Inherent in this formidable power," the court believed, "is the potential for [such] abuse." (*Id.* at pp. 216–217.) The "danger that an officer will commit a sexual assault while on duty arises from the considerable authority and control inherent in the responsibilities of an officer in enforcing the law." (*Id.* at p. 218.) Therefore, the court held that the third reason for applying the principle of vicarious liability exists: "The cost [an award of damages to the rape victim] resulting from misuse of that power should be borne by the community, because of the substantial benefits that the community derives from the lawful exercise of police power." (*Id.* at p. 217.) The court also held the other two reasons for applying vicarious liability exist: imposing vicarious liability on the employers of police officers who rape women detained by the officers "would encourage the employers to take preventive measures" against the recurrence of such tortious conduct; and imposition of vicarious liability is "an appropriate method to ensure that victims of police misconduct are compensated" (*id.* at p. 215).

Observing that the holding in *Mary M.* was a "radical departure" from the "traditional" law of vicarious liability, Justice Baxter, joined by Chief Justice Lucas, criticized "the majority's incomplete discussion of the competing public policies" underlying imposition of vicarious liability. (*Mary M., supra*, 54 Cal.3d at pp. 230, 231 (conc. opn. of Baxter, J.).) They noted, among other things, that while compensating a victim of such police misconduct is a "worthy and sympathetic goal," it can harm the general public by depleting the "limited public resources" needed for other important public purposes (*id.* at p. 231) and by " 'tend[ing] to make insurance, already a scarce resource, even harder to obtain' " (*id.* at p. 236). They also noted the "majority's inability to suggest how vicarious liability might deter sexual misconduct by public employees" (*id.* at p. 237).

Whether the *Mary M.* decision's application of vicarious liability still has the support of a majority of the California Supreme Court is questionable. Only four of the current seven members of the court have weighed in on the issue. Only one, Justice Kennard (the author of *Mary M.*), presumably embraces its holding unequivocally. Justice Werdegar has strictly limited the application of *Mary M.* to sexual misconduct that is committed by an on-duty police officer against a person the officer has detained. (See *Lisa M., supra*, 12 Cal.4th at p. 304.) Chief Justice George and Justice Baxter would overrule *Mary M.* (See *Lisa M., supra*, 12 Cal.4th at p. 306 (conc. opn. of George, J.); *Farmers Ins. Group v. County of Santa Clara, supra*, 11 Cal.4th at p. 1020

(conc. opn. of George, J.) [describing *Mary M.* as an "aberrant holding" that was "wrongly decided"]; *Mary M., supra*, 54 Cal.3d at p. 244 (conc. opn. of Baxter, J.).)

We, of course, are bound by the holding of *Mary M.* (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) However, both the *Mary M.* decision itself, and subsequent decisions by the California Supreme Court, dictate we not extend vicarious liability to the alleged sexual assaults by the firefighters in this case.

■　Emphasizing that its application of vicarious liability to a sex crime is narrow, the majority in *Mary M.* stated: "We stress that our conclusion in this case flows from the unique authority vested in police officers. Employees who do not have this authority and who commit sexual assaults may be acting outside the scope of their employment as a matter of law." (*Mary M., supra*, 54 Cal.3d at p. 218, fn. 11.)

Years later, the California Supreme Court observed that our state's courts have not extended the *Mary M.* holding to employees other than police officers. (*Farmers Ins. Group v. County of Santa Clara, supra*, 11 Cal.4th at pp. 1006–1007 (hereafter *Farmers Ins. Group*) ["except where sexual misconduct by on-duty police officers against members of the public is involved [citations], the employer is not vicariously liable to the third party for such misconduct [citations]"].)

■　For example, *Lisa M.* concluded that a hospital was not vicariously liable for the sexual molestation of a patient by an ultrasound technician employed by the hospital. (*Lisa M., supra*, 12 Cal.4th at pp. 294, 296–306.) In an opinion authored by Justice Werdegar, the Supreme Court explained that the fact "the employment brought tortfeasor and victim together in time and place is not enough." (*Id.* at p. 298.) Nor was it enough that the job involved physical touching of the victim. (*Id.* at p. 302.) For vicarious liability to apply, the employment "must be such as predictably to create the risk employees will commit intentional torts of the type for which liability is sought." (*Id.* at pp. 299, 302.) Nothing about the ultrasound procedure would be expected to give rise to sexual emotions or exploitation. (*Id.* at pp. 302–303.) Rather, the ultrasound technician "simply took advantage of solitude with a naive patient to commit an assault for reasons unrelated to his work." (*Id.* at p. 301.) Unlike the police officer in *Mary M.*, the ultrasound technician "was not vested with any coercive authority"; "the trust [the victim] was asked to place in him was limited to conduct of an ultrasound examination"; and his misconduct "was independent of the narrow purpose for which [the victim] was asked to trust him." (*Id.* at p. 304.) Thus, the sexual tort was not "engendered by the employment" and did not "arise

from" the employment for purposes of vicarious liability (*id.* at p. 298); and it would be unfair to attribute to the hospital the costs "of a deliberate, independently motivated sexual battery unconnected to the prescribed examination" (*id.* at p. 304). The misconduct was "too attenuated" to support allocation of damages to the hospital as a cost of doing business; and it cannot be said that the two other policies underlying vicarious liability would be advanced by holding the hospital liable for the unforeseeable sexual misconduct of its employee. (*Id.* at pp. 304–305.)

█ The California Supreme Court has even declined to apply the principle of vicarious liability to a law enforcement officer's sexual misconduct directed at other law enforcement officers, rather than at a person detained by the officer. In *Farmers Ins. Group*, a male deputy sheriff "lewdly propositioned and offensively touched" two female deputy sheriffs while working together at the county jail. (*Farmers Ins. Group, supra*, 11 Cal.4th at p. 997.) The court, including Chief Justice George and Justices Baxter and Werdegar, observed that, although the deputy's harassing sexual acts were committed "during his work hours at the jail," (1) they "were motivated for strictly personal reasons unrelated to the guarding of inmates or the performance of any other duty of a deputy sheriff at a county jail," (2) they were "not reasonably necessary to his comfort, convenience, health, and welfare while at work," and (3) they were not "precipitated by a work-related dispute over the performance of his duties or those of his victims." (*Id.* at p. 1007.) Therefore, the sexual misconduct was "not a risk that may fairly be regarded as typical of or broadly incidental to the operation of a county jail" and "must be deemed to fall outside the scope of a deputy sheriff's employment." (*Id.* at pp. 997, 1009, 1019.) The court rejected an "attempted analogy to *Mary M.*" (*id.* at p. 1012); although the offending officer was the supervisor of one of the victims for a period of time, his "work-related authority . . . over [her] is in no way comparable to the extraordinary power and authority that police officers exercise over members of the public" (*id.* at p. 1012). The court went on to note *Mary M.* "did not suggest that an employer may be vicariously liable for an employee's misconduct whenever there is an abuse of a job-created, hierarchical relationship in which the employee is afforded a high degree of authority over the victim" (*id.* at pp. 1012–1013); and *Mary M.* "did not purport to overrule previous cases" that rejected application of vicarious liability to such circumstances (*id.* at p. 1013). Such cases, the Supreme Court held, "support the conclusion that, for purposes of [vicarious liability], employees do not act within the scope of employment when they abuse job-created authority over others for purely personal reasons." (*Ibid.*) Finally the court concluded that the policy reasons for applying vicarious liability did not exist: "the goal of deterring sexual harassment would not and should not be advanced by [measures, such as vicarious liability,] that are unreasonable and of marginal benefit" (*id.* at p. 1015); even though the

imposition of such liability "might additionally assure compensation to victims," it might " 'tend to make insurance, already a scarce resource, even harder to obtain, and could lead to the diversion of needed funds from [the oversight of inmates and jail security] to cover claims' " of victims of the officer's personally motivated sexual misconduct—thus making the second factor "to be, at best, neutral" (*id.* at p. 1016); and because the connection between the officer's duties and his targeting the victims was so attenuated, it would not be equitable to require the employer to bear the cost of the victims' injuries (*id.* at p. 1017).

For similar reasons, vicarious liability does not apply to the alleged sexual misconduct of the City's firefighters in this case. For starters, they had no coercive authority over the victim. Nor did they purport to detain her for any firefighting investigation or even purport to be engaged in any duty of a firefighter; they simply invited her to take photographs of them in the firetruck. Their alleged nonconsensual sexual assault was motivated for strictly personal reasons not related to their duties and performance as firefighters; indeed, one of them was off duty. The sexual acts were not reasonably necessary to the firefighters' comfort, convenience, health, and welfare while at work. The acts were not precipitated by a work-related dispute over performance of their duties. The harm to the victim was not a risk that may fairly be regarded as typical of or broadly incidental to the operations of a firefighter. And the three policy reasons for vicarious liability would not be promoted by holding the City liable for the firefighters' acts: (1) the victim, whose burden it is to establish that the acts were within the scope of the firefighters' employment (*Farmers Ins. Group, supra*, 11 Cal.4th at p. 1002), has failed to explain how the imposition of vicarious liability in this case would prevent recurrence of such untypical, tortious conduct; (2) vicarious liability might give greater assurance of victim compensation, "but the consequential costs of ensuring compensation in this manner are unclear" (*Lisa M., supra*, 12 Cal.4th at p. 305) and may do more harm to than good for the reasons stated by Justice Baxter in his majority opinion in *Farmers Ins. Group* and in his concurring opinion in *Mary M.*; and (3) as discussed above, it would be inequitable to impose vicarious liability on the City, which gained no "benefit from the enterprise that gave rise to the injury" (*Farmers Ins. Group, supra*, 11 Cal.4th at p. 1016). Thus, the sexual misconduct allegedly committed in this case must be deemed to fall outside the scope of employment as firefighters. (Cf. *Lisa M., supra*, 12 Cal.4th 291; *Farmers Ins. Group, supra*, 11 Cal.4th 992.)[2]

---

[2] In the view of our dissenting colleague, the allegation that the City of Sacramento's fire department had a policy allowing on-duty firefighters to take firetrucks to parties and pick up women presents a triable issue of fact as to whether the sexual assaults alleged in this case were foreseeable and, therefore, fairly attributable to work conditions. We cannot agree that the

Consequently, the trial court correctly entered judgment in favor of the City of Sacramento on the second, fourth, and fifth causes of action. The third cause of action was dismissed, and plaintiff does not challenge the entry of judgment in favor of the City on the sixth cause of action.

This leaves the first cause of action for alleged negligent hiring, supervision, and retention of Mitchell and Singleton. In the trial court, plaintiff did not file an opposition to the City's separate statement of undisputed facts and its points and authorities asserting there are no triable issues of material fact that would support plaintiff's first cause of action. In the brief filed by her attorney in this court, the five-sentence "analysis" of this issue is cursory, without any citation to authority or meaningful argument. The brief does not cite any facts that would support her claim that the fire department was negligent in hiring Mitchell and Singleton. The brief makes no argument as to how the City can be liable to plaintiff for its alleged negligence after plaintiff's injury, i.e., the retention of Mitchell and Singleton (actually, Mitchell was placed on leave and resigned two weeks after his alleged misconduct). And the brief does not present any analysis on how the alleged negligent supervision supports a claim for damages based on sexual misconduct that was unforeseeable for the purpose of vicarious liability. We thus deem the argument to be forfeited. (*In re S.C.* (2006) 138 Cal.App.4th 396, 408 [41 Cal.Rptr.3d 453]; *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784–785 [79 Cal.Rptr.2d 273].)

Because plaintiff has not demonstrated that she can state a cause of action against the City of Sacramento, her claims that the trial court erred in denying her motions for a continuance, for reconsideration, and for relief pursuant to Code of Civil Procedure section 473 fail for lack of prejudice. In any event, plaintiff has not carried her burden to affirmatively show error.

## DISPOSITION

The judgment entered in favor of the City is affirmed. Appellant shall reimburse the City for its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)

Nicholson, J., concurred.

**CANTIL-SAKAUYE, J.,** Dissenting.—Respectfully, I dissent. The distinguishing fact in this case from the cases cited by my colleagues is that plaintiff's complaint alleged the City of Sacramento (City) had a policy that

alleged policy would make *nonconsensual sexual assault* inherent in the work environment such that it can be said to be typical of or broadly incidental to the employer's enterprise.

made sexual assault by firefighters foreseeable. Thus, my disagreement lies not in the case law as analyzed by my colleagues, but rather that in this summary adjudication procedure, the City ignored allegations in the complaint that, in my opinion, made sexual assault by firefighters foreseeable.

Plaintiff's complaint alleged the City had a policy that made sexual assault by firefighters foreseeable.

The complaint alleged "The Defendant CITY and Defendant FIRE DEPARTMENT have had policies in place where captains and firefighters were permitted to take fire trucks and engine trucks to bars and parties, and **with captains present**, pick up on women and take women on their fire trucks. The City of Sacramento and Sacramento Fire Department firefighters took advantage of their status as firefighters and the post 9/11 public sentiment perception that firefighters are 'heroes.' They abused their authority by picking up women and drinking on the job. [¶] This practice of drinking on the job and picking up women [on the job] has been in place for years and has been known by Defendant CITY and Defendant FIRE DEPARTMENT Administration. These internal policies and practices of taking fire trucks, while on duty, to bars to pick up on women put in motion a chain of events wherein firefighter Defendant MITCHELL and other firefighters felt that it was permissible to engage in conduct such as that which led to the events where Plaintiff Jane Doe was sexually assaulted."

A motion for summary judgment must respond to the allegations of the complaint. (*Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1258 [78 Cal.Rptr.3d 372].) In moving for summary adjudication, the City did not respond to this allegation.

Generally, an employer will not be held vicariously liable for sexual assault by an employee because the assault is personally motivated and those motivations are "not generated by or an outgrowth of workplace responsibilities, conditions or events." (*Lisa M. v. Henry Mayo Newhall Memorial Hospital* (1995) 12 Cal.4th 291, 302 [48 Cal.Rptr.2d 510, 907 P.2d 358].) In *Lisa M.*, however, the court declined to hold that sex crimes are never foreseeable outgrowths of employment. (*Id.* at p. 300.) A sexual tort will be considered engendered by employment only if its motivating emotions are fairly attributable to work-related events or conditions. (*Id.* at p. 301.)

The majority contends sexual assault would not be typical or broadly incidental to the employer's enterprise as a matter of law, even if the alleged policy existed. (Maj. opn., *ante*, at p. 133, fn. 2.) Generally, whether an employee's tortious act was within the scope of employment is a question of fact. (*Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202, 213 [285 Cal.Rptr.

99, 814 P.2d 1341] (*Mary M.*); *Perez v. Van Groningen & Sons, Inc.* (1986) 41 Cal.3d 962, 968 [227 Cal.Rptr. 106, 719 P.2d 676].) It becomes a question of law only when the facts are undisputed and no conflicting inferences are possible. (*Mary M., supra*, at p. 213; *Perez v. Van Groningen & Sons, Inc., supra*, at p. 968.) In finding the sexual assault not within the scope of employment as a matter of law, despite the alleged policy of permitting firefighters to drink and pick up women while on the job, the majority ignores the role of alcohol in sexual assault cases. Given the dispute as to what happened on the firetruck and the uncertainty as to the policy, there is at least a triable issue of fact whether the assault was fairly attributable to the work conditions under which, allegedly, firefighters were permitted to take trucks to bars, drink and pick up women.

In considering whether vicarious liability should apply, courts consider the three policy goals of the respondeat superior doctrine. These three policy goals are: "(1) to prevent recurrence of the tortious conduct; (2) to give greater assurance of compensation for the victim; and (3) to ensure that the victim's losses will be equitably borne by those who benefit from the enterprise that gave rise to the injury." (*Farmers Ins. Group v. County of Santa Clara* (1995) 11 Cal.4th 992, 1013 [47 Cal.Rptr.2d 478, 906 P.2d 440] (*Farmers Ins. Group*).)

I agree that absent the allegation of a policy permitting firefighters on duty to go to bars, drink and pick up women, the facts of this case would not favor the imposition of vicarious liability. However, the presence of the policy allegation, which the City has failed to dispute, changes the outcome of the analysis.

In a motion for summary adjudication, taking into account the alleged policy, which we must since it was ignored by the City, the policy goals of respondeat superior favor imposition of vicarious liability. Imposing vicarious liability would lead to adoption of precautionary measures. The most obvious precautionary measure available is to change the policy. Compensation for the victims is appropriate for the same reasons set forth in *Mary M., supra*, 54 Cal.3d 202, 215–216, where sexual misconduct by a police officer was at issue. This case is distinguishable from *Farmers Ins. Group*, where the plaintiff had an alternative remedy under the California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.). (*Farmers Ins. Group, supra*, 11 Cal.4th at p. 1016.) Finally, it is equitable to have the costs of alleged policy, which led to the sexual assault, borne by the entity that benefits from the policy. If it is true that the City has the policy permitting firefighters to go to bars, drink and pick up women, the City presumably had determined the policy has some benefit. It is only fair that the City bear the costs of losses attributable to that policy.

This case is before us on summary adjudication and the City has not attempted to dispute the allegation of the policy. Whether an employee has acted within the scope of employment is a question of fact unless "the relationship between an employee's work and wrongful conduct is so attenuated that a jury could not reasonably conclude that the act was within the scope of employment. [Citations.]" (*Mary M., supra,* 54 Cal.3d at p. 213.) Given the allegation of the policy, I continue to believe we cannot say, as a matter of law, that the wrongful conduct alleged here was so attenuated.

Appellant's petition for review by the Supreme Court was denied November 10, 2009, S176223.