BYBEE, Circuit Judge,
concurring in part, dissenting in part:
I agree with the majority that “[t]he United States is immune from liability for an assault or battery by its employee,” Maj. Op. at 950, and that the district court therefore properly dismissed Lu’s assault and battery claims against the United States. In addition, I agree with the majority that 28 U.S.C. § 2680(a), the Federal Tort Claims Act discretionary function exception, bars Lu’s claim that the United States was negligent in its employment of Powell because the “treatment of Powell for his violation of the regulation lay within the discretion of his supervisor[, and t]he United States is not liable for the exercise of that discretion.” Maj. Op. at 950.
I disagree, however, with the majority’s conclusion that when Powell solicited sex and money from Lu in exchange for asylum, he acted within the scope of his employment under California law. The California Supreme Court has held that a deputy sheriff who “lewdly propositioned and offensively touched” a co-worker was not within the “scope of his ... employment as an employee of [a] public entity,” Farmers Ins. Group v. Santa Clara, 11 Cal.4th 992, 47 Cal.Rptr.2d 478, 906 P.2d 440, 444 (1995), and California has generally refused to hold employers liable for the sexual misconduct of their employees. See, e.g., Lisa M. v. Henry Mayo Newhall Mem’l Hosp., 12 Cal.4th 291, 48 Cal. Rptr.2d 510, 907 P.2d 358 (1995); M.P. v. City of Sacramento, 177 Cal.App.4th 121, 98 Cal.Rptr.3d 812, 814 (2009). Because I do not believe that California would hold an employer liable under the circumstances of this case, under the Federal Tort Claims Act (FTCA), the United States is not liable “in accordance with the law of the place where the act or omission occurred.” 28 U.S.C. § 1346(b)(1). I respectfully dissent from the majority’s decision to allow Lu’s intentional infliction of emotional distress and California Civil Code § 52.1 claims to go forward.
I
The FTCA provides a limited waiver of the sovereign immunity of the United States “for injury or loss of property ... caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.” 28 U.S.C. § 1346(b)(1). Under 28 U.S.C. § 2680(h), however, the United States is not liable for “[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights.” Notably absent from this list, for our purposes, is intentional infliction of emotional distress. Although “a claim based on conduct constituting the tort of intentional infliction of *952 emotional distress is not excluded ... by § 2680(h),” it is barred by § 2680(h) if “in substance the conduct relied upon constituted a specifically excluded tort.” Sheehan v. United States, 896 F.2d 1168, 1172 (9th Cir.1990); see also Sabow v. United States, 93 F.3d 1445, 1456 (9th Cir.1996) (“We focus our § 2680(h) inquiry on whether conduct that constitutes an enumerated tort is ‘essential’ to a plaintiffs claim.”).
In order for the United States to be vicariously liable for Powell’s actions, Powell must have intentionally inflicted emotional distress[1] on Lu or deprived her of rights secured by the Constitution or the laws of the United States, Cal. Civ.Code § 52.1(a), “while acting within the scope of his office or employment” as an asylum officer “under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.” 28 U.S.C. § 1346(b)(1). In this case, Powell’s actions occurred in California, so California’s principles of respondeat superior control. See Id. The majority holds that the United States, if it were a California employer, would be liable for Powell’s actions. I respectfully disagree with the majority’s assessment of California’s law.
Under California law, an employer can be held liable for the wilful and malicious torts committed by its employees if an employee commits the tort in the scope of his or her employment. This is true even if the tort was not done as “a means, or for the purpose of performing the work [the employee] was employed to do.” Carr v. Wm. C. Crowell Co., 28 Cal.2d 652, 171 P.2d 5, 7 (1946). In Carr, the California Supreme Court held that an employer was liable for injury caused when its employee threw a hammer at a co-worker. Id. The court concluded that by “bringing men together” the employer had “create[d] occasions for lapses into carelessness, and for fun-making and emotional flareup.... These expressions of human nature are incidents inseparable from working together. They involve risks of injury and these risks are inherent in the working environment.” Id. at 8.
Carr’s virtually unworkable holding' — • that is, “boys will be boys” and the employer is responsible for their “expressions of human nature” because the employer created a “working environment” — has been explained and modified by more recent California Supreme Court decisions. “[N]otwithstanding the generally broad view given to scope of employment determinations,” the California Supreme Court has said, “the law is clear that an employer is not strictly liable for all actions of its employees during working hours. Significantly, an employer will not be held vicariously liable for an employee’s malicious or tortious conduct if the employee substantially deviates from the employment duties for personal purposes.” Farmers Ins. Group, 47 Cal.Rptr.2d 478, 906 P.2d at 449 *953 (emphasis omitted). In Lisa M., the court explained that the principle of respondeat superior is limited by the element of foreseeability: An employer is only liable when, considering the enterprise’s operations, the risk of injury is generally foreseeable:
the employer will not be held liable for an assault or other intentional tort that did not have a causal nexus to the employee’s work.... An act serving only the employee’s personal interest is less likely to arise from or be engendered by the employment than an act that, even if misguided, was intended to serve the employer in some way.... That the employment brought tortfeasor and victim together in time and place is not enough.... [T]he risk of tortious injury must be inherent in the working environment or typical of or broadly incidental to the enterprise the employer has undertaken.
Lisa M., 48 Cal.Rptr.2d 510, 907 P.2d at 361-62 (quotation marks omitted). Lisa M. involved a sexual tort, and with respect to sexual torts in particular, the court held that “a sexual tort will not be considered engendered by the employment unless its motivating emotions were fairly attributable to work-related events or conditions .... If the assault was ... the result of only propinquity and lust, there should be no liability.” Id., 48 Cal.Rptr.2d 510, 907 P.2d at 364 (quotation marks and omission omitted).
With the foregoing principles in mind, I turn to the question of whether Powell acted within the scope of his employment when he traveled to Lu’s home and requested sexual favors and money in return for recommending that the United States grant her asylum. As an asylum officer, Powell’s duties were set out in (then) INS’s regulations. Such officers were “delegated the authority to hear and adjudicate credible fear of persecution determinations ... [and] applications for asylum ....” 8 C.F.R. § 103.1(g)(3)(ii) (2000). “An asylum officer may grant asylum in the exercise of discretion to an applicant who qualifies as a refugee.... [T]he asylum officer shall either grant asylum or refer the application to an immigration judge for adjudication in deportation, exclusion, or removal proceedings. An asylum officer may refer such an application after an interview....” 8 C.F.R. § 208.14(b) (2000). An asylum officer must “conduct the interview in a nonadversarial manner and, except at the request of the applicant, separate and apart from the general public.” 8 C.F.R. § 208.9(b) (2000). During the interview, an asylum officer has “authority to administer oaths, verify the identify of the applicant ... present and receive evidence, and question the applicant and any witnesses.” Id. § 208.9(c). In considering whether to grant an applicant asylum, “[t]he asylum officer shall consider evidence submitted by the applicant together with his or her asylum application....” Id. § 208.9(e).
Powell’s actions (well described by the majority) were plainly outside his regular duties, and for that, Powell was convicted of bribery by a public official under 18 U.S.C. § 201(b)(2)(A) and deprivation of rights under color of law under 18 U.S.C. § 242. Notwithstanding the fact that Powell’s employer, the United States, brought charges against Powell and convicted him of two felonies, Lu argues that Powell was acting within the scope of his employment when he committed his criminal acts. Intuitively, I cannot see how an act criminally punishable by the United States can possibly be considered within the scope of Powell’s employment as an asylum officer. Moreover, I do not think California’s law is to the contrary. I thus agree with the majority that “Powell abused his powers for his own benefit,” but *954 I disagree that “[i]n doing so, he acted within the scope of his employment as defined by California.” Maj. Op. at 949.
II
California has had substantial experience with suits against employers based on employee sexual misconduct. In Lisa M., an ultrasound technician sexually assaulted a patient ten minutes after conducting the patient’s ultrasound examination. 48 Cal. Rptr.2d 510, 907 P.2d at 359. The California Supreme Court held that the hospital was not vicariously liable for the technician’s assault. The court reasoned that the ultrasound technician was not acting within the scope of his employment when he assaulted the patient because “the technician’s decision to engage in conscious exploitation of the patient did not arise out of the performance of the examination, although the circumstances of the examination made it possible.” Id., 48 Cal. Rptr.2d 510, 907 P.2d at 364 (emphasis omitted). The technician’s “personal motivations” to assault the patient “were not generated by or an outgrowth of workplace responsibilities, conditions or events.” Id.
In Farmers Insurance Group, the California Supreme Court similarly held that a sheriffs “lewd[] proposition[s to] and offensive!]] touch[ings]” of a co-worker did not arise within the “scope of his ... employment as an employee of [a] public entity.” 47 Cal.Rptr .2d 478, 906 P.2d at 444. The court in Farmers Insurance Group found that the deputy sheriff was not acting within the scope of his employment when he asked his subordinate for sexual favors and offensively touched her because “the deliberate targeting of an individual employee by another employee for inappropriate touching and requests for sexual favors is not a risk that may fairly be regarded as typical of or broadly incidental to the operation of a county jail.” Id. Even though there was evidence that sexually explicit banter was common among employees at the jail, the court refused to hold that the deputy’s requests for sex from a subordinate were “broadly incidental” to his tasks and duties. Id., 47 Cal. Rptr.2d 478, 906 P.2d at 454.
These cases are typical of the host of California cases where the court refused to hold employers — public[2] and private — liable for the sexual torts committed by their employees. See, e.g., M.P., 98 Cal.Rptr.3d at 815 (City of Sacramento not vicariously liable for claims of assault, battery, and intentional infliction of emotional distress after two firefighters (one on-duty at the time) assaulted a woman during the Porn Star Costume Ball); Maria D. v. Westec Residential Sec., Inc., 85 Cal.App.4th 125, 102 Cal.Rptr.2d 326 (2000) (security company not vicariously liable for on-duty security guard’s rape of a motorist); Jeffrey E. v. Cent. Baptist Church, 197 Cal.App.3d 718, 243 Cal.Rptr. 128 (1988) (protestant *955 church not vicariously liable for assault, battery, and intentional infliction of emotional distress of a minor after Sunday school teacher molested minor); Rita M. v. Roman Catholic Archbishop, 187 Cal. App.3d 1453, 232 Cal.Rptr. 685 (1986) (archbishop not vicariously liable for sexual relations between seven priests and minor parishioner); Alma W. v. Oakland Unified Sch. Dist., 123 Cal.App.3d 133, 176 Cal.Rptr. 287 (1981) (school district not vicariously liable for rape of a student by a janitor). In a few cases, California courts have held that an employee’s sexual propositions or sexual assault were “broadly incidental” to the employee’s duties, but the courts in these cases focused on the unique authority of police officers or the special relationship between clients and therapists. See, e.g., Mary M. v. City of Los Angeles, 54 Cal.3d 202, 285 Cal.Rptr. 99, 814 P.2d 1341 (1991) (city could be vicariously liable for an on-duty police officer’s rape of a woman); Richard H. v. Larry D., 198 Cal.App.3d 591, 243 Cal.Rptr. 807 (1988) (clinic could be vicariously liable for fraud, negligence, and negligent infliction of emotional distress where marriage therapist who was the head of the psychiatric department had sexual relations with the wife of a couple he was counseling); White v. County of Orange, 166 Cal.App.3d 566, 212 Cal.Rptr. 493 (1985) (county could be vicariously liable for deputy sheriffs threats to rape a motorist).[3]
The majority relies on Inter Mountain Mortgage, Inc. v. Sulimen, 78 Cal.App.4th 1434, 93 Cal.Rptr.2d 790 (2000), to hold that Powell acted within the scope of his employment when he requested sex and money from Lu. Maj. Op. at 949. In Sulimen, the court held a mortgage company vicariously liable for an employee’s fraud. The employee, a mortgage broker, submitted fraudulent paperwork under the name of the employer and represented to the client that he was fulfilling his job duties as a loan broker in submitting the paperwork. Id. at 795. The court found that because he held himself out as an employee of his employer when he committed the fraud, a triable issue of fact existed as to whether he was acting within the scope of his employment. Id. at 796. The court reasoned, “the risk of one of defendants’ loan representatives submitting a fraudulent loan application ... was a generally foreseeable risk inherent and incidental to *956 defendants’ mortgage loan brokerage business.” Id.
Although Sulimen could be read to support the argument that Powell was acting within the scope of his employment when he solicited sex and money from an asylum applicant, I do not believe such a reading is necessary. Powell’s request is not a “generally foreseeable risk inherent and incidental” to the United States asylum system. Id. Again, the California Supreme Court sexual misconduct cases are more directly on point here. Just as it was not a generally foreseeable risk that an ultrasound technician would exploit a patient ten minutes after finishing her examination, it was not foreseeable that Powell would exploit an asylum applicant several days after conducting her official asylum interview. His actions of going to Lu’s house and requesting sex and money for asylum were unrelated to his responsibility to only “consider evidence submitted by the applicant” in deciding whether to grant asylum. 8 C.F.R. § 208.9(e) (2000). Like the deputy sheriff in Farmers Insurance Group who “lewdly propositioned” a subordinate, Powell “lewdly propositioned” an asylum applicant, but such actions were for his own personal reasons and not within the scope of his employment as an asylum officer. On the whole, California cases support the conclusion that when Powell requested that Lu give him money or sex in exchange for asylum, he substantially deviated from his duties as an asylum officer and acted as a “result of only propinquity and lust.” Lisa M., 48 Cal. Rptr.2d 510, 907 P.2d at 364.
Ill
California cases also make clear that Powell was not acting within the scope of his employment by the mere fact that his position as an asylum officer brought him into contact with Lu. “If an employee’s tort is personal in nature, mere presence at the place of employment and attendance to occupational duties prior or subsequent to the offense will not give rise to a cause of action against the employer under the doctrine of respondeat superior.” Farmers Ins. Group, 47 Cal.Rptr.2d 478, 906 P.2d at 450 (quotation marks and alteration omitted). In Lisa M., the court concluded that even though the “hospital, by employing the technician and providing the ultrasound room may have set the stage for [the technician’s] misconduct, ... the script was entirely of his own, independent invention” and that it would be “unfair and inconsistent with the basic rationale of respondeat superior to impose liability on [the] [h]ospital irrespective of its own negligence.” Lisa M., 48 Cal.Rptr.2d 510, 907 P.2d at 367. Even though Powell had the opportunity to exploit Lu by virtue of his position as an asylum officer, that fact alone does not make his personal request for sex and money fall within the scope of his employment.
In addition, although Powell had the authority to grant Lu asylum, this authority was not enough to bring his tortious action within the scope of his employment under California case law. In John R. v. Oakland Unified School District, 48 Cal.3d 438, 256 Cal.Rptr. 766, 769 P.2d 948 (1989), parents of a fourteen year-old junior high school student sued the school district under the doctrine of respondeat superior when one of its school teachers sexually molested the student while the student was at the teacher’s apartment participating in an officially sanctioned extracurricular program. The parents argued that the teacher acted within the scope of his employment because “the teacher used his authority to obtain [their son’s] participation in the extracurricular program and thereby obtained the boy’s presence at the teacher’s home away from other eyes.” *957 Id., 256 Cal.Rptr. 766, 769 P.2d at 955. Despite the fact that the teacher invoked his authority to get the boy alone at his house for an approved extracurricular program and told the boy that sex was part of the teacher-student relationship, the court refused to find that the teacher acted within the scope of his employment. The court concluded, “[t]he teacher’s authority ... is simply not great enough to persuade us that vicarious liability should attach here for the teacher’s tort.” Id., 256 Cal.Rptr. 766, 769 P.2d at 956-57.
Here, Powell arguably asserted his authority as an asylum officer to request sex and money in exchange for granting asylum. But his authority to grant or deny Lu’s asylum application does not persuade me that vicarious liability should attach to the United States for Powell’s lewd and selfish conduct. Even though the teacher in John R. lured a student to the teacher’s house under the auspices of an official extracurricular program, the court declined to find that the teacher acted within the scope of his employment. Likewise, the fact that Powell used his authority to come over to the Lu’s home does not make his subsequent criminal activity fall within the scope of his employment.
IV
Because Powell was not acting within the scope of his employment, the United States is not vicariously liable for Lu’s claims that Powell inflicted emotional distress on her or that he interfered with her rights under California Civil Code § 52.1.1 respectfully dissent from that portion of the majority’s opinion and judgment.

. In the vast majority of cases, the claim of intentional infliction of emotional distress will arise from one of the barred enumerated torts like assault, battery, false arrest, libel, deceit, or misrepresentation and therefore be barred under the FTCA as well. But this case presents a unique set of facts. Even though Lu abandoned her suit against the United States based on Powell’s alleged battery and sexual assault, on appeal, Lu argues that her claim of intentional infliction of emotional distress is still viable because it is grounded on Powell’s request for money and sexual favors. Reply Br. at 4 n. 1. Because bribery by a public official is not listed in 28 U.S.C. § 2680(h) and does not fairly fall within any of the excluded categories, I agree with the majority that Lu’s claim that Powell intended to cause her emotional distress by requesting sex and money in return for asylum is not statutorily barred by 28 U.S.C. § 2680(h).

. The majority suggests that California's public entity respondeat superior cases are not analogous to private employer respondeat superior cases. See Maj. Op. at 947 ("Because it involved a public employer, Mary M. provides less than compelling precedent.” (citation and quotation marks omitted)). I see no discernable difference in California’s treatment of public and private employers. In both private sector and public employer cases, California courts have applied general principles of respondeat superior. See Mary M. v. City of Los Angeles, 54 Cal.3d 202, 285 Cal.Rptr. 99, 814 P.2d 1341, 1344 (1991) ("[T]he Legislature incorporated general standards of tort liability as the primary basis for respondeat superior liability of public entities,” and "[cjourts have construed the term 'scope of employment’ in section 815.2 [the section that makes public entities liable for the torts of an employee] as broadly as in private tort litigation.” 54 Cal.3d 202, 285 Cal.Rptr. 99, 814 P.2d 1341, 1344 (1991) (quotation marks omitted)).

. There is, admittedly, some tension between the California Supreme Court's decision in, Mary M., 285 Cal.Rptr. 99, 814 P.2d 1341, and its subsequent decisions — tension that has been noted by the California courts themselves. In Mary M., the California Supreme Court held that rape was within the scope of an on-duty police officer’s employment and that the city was liable. The court "stress[ed] that [its] conclusion ... flow[ed] from the unique authority vested in police officers. Employees who do not have this authority and who commit sexual assaults may be acting outside the scope of their employment as a matter of law.” Id.., 285 Cal.Rptr. 99, 814 P.2d at 1350 n. 11. The California Supreme Court seemed to limit Mary M.’s holding to sexual assault by on-duty police officers in Farmers Insurance Group, 47 Cal.Rptr.2d 478, 906 P.2d at 450. See id. ("[E]xcept where sexual misconduct by on-duty police officers against members of the public is involved, the employer is not vicariously liable to the third party for such misconduct.” (citation omitted)); see also Lisa M., 48 Cal.Rptr.2d 510, 907 P.2d at 366 (stating that Mary M. provides "less than compelling precedent for liability” because the court "expressly limited [Mary M.'s] holding” to on-duty police officers); M.P., 98 Cal.Rptr.3d at 814-15 ("It is questionable whether the holding in Mary M. is still viable.... [W]e conclude that the Mary M. holding that a public employer of a police officer may be vicariously liable for a sex crime committed by the officer against a person detained by the officer while on duty is, at best, limited to such acts by an on-duty police officer and does not extend to any other form of employment.”). Because Powell was not a police officer acting within the scope of his employment, Mary M. has little relevance to the present case.