**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

XUE LU; JIE HAO,
          *Plaintiffs-Appellants,*

v.

THOMAS POWELL; ROBERT LOONEY,
          *Defendants,*

and

UNITED STATES OF AMERICA,
          *Defendant-Appellee.*

No. 08-56421

D.C. No.
2:01-cv-01758-
CBM-E

OPINION

Appeal from the United States District Court
for the Central District of California
Consuelo B. Marshall, District Judge, Presiding

Argued and Submitted
May 7, 2010—Pasadena, California

Filed September 2, 2010

Before: John T. Noonan, Richard R. Clifton and
Jay S. Bybee, Circuit Judges.

Opinion by Judge Noonan;
Partial Concurrence and Partial Dissent by Judge Bybee

13345

## COUNSEL

Vincent J. DeSimone, Venice, California, for the plaintiffs-appellants.

Henry C. Whitaker, Washington, D.C., for the defendant-appellee.

## OPINION

NOONAN, Circuit Judge:

Xue Lu (Lu) and Jie Hao (Hao) appeal the judgment of the district court dismissing their suit under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b), and other claims against the United States and various officials. The FTCA

incorporates the law of the state in which the tort is alleged to have occurred, in this case California, so that we are bound to interpret and apply the law California would apply to a private employer. We affirm in part, reverse in part, and remand for further proceedings.

## FACTS

We take the facts alleged by the plaintiffs as true for the purposes of this opinion. *Nurse v. United States*, 226 F.3d 996, 1000 (9th Cir. 2000).

Lu and Hao are each citizens of the People's Republic of China. Each was lawfully admitted to the United States as a non-immigrant, and each filed an application for asylum on political grounds. Each received an initial interview with Thomas A. Powell, Jr. What happened thereafter is the basis for their suit.

On February 15, 2000, Lu was interviewed by Powell, aged 58, who had served seven years as an Asylum Officer in the Immigration and Naturalization Service in Los Angeles. An asylum officer had the authority to grant Lu's request for asylum. *See* 8 C.F.R. § 208.14(b). If the asylum officer did not decide to grant the request, Lu's case would be referred to a hearing before an immigration judge. *See* 8 C.F.R. § 208.14(c)(1). Powell's exercise of authority in her favor could avoid such a hearing and confer upon her the benefit of indefinite lawful asylee status. *See* 8 C.F.R. § 208.14(e).

Approximately a week after her interview, Powell telephoned Lu and told her that he would meet her at her residence in Monterey Park. No one else should be present. On February 26, Powell appeared at her apartment and began discussion of her case, stating that he had helped others and could help her. Payment made to him, he insinuated, would make him approve her application. He then attempted to unzip and remove her pants. When she rebuffed him, he told her

that her application for asylum would be denied. On March 1, 2000, he issued the denial.

Lu informed her lawyer of Powell's offer and overtures. By chance, her lawyer was also representing Hao, who had her initial interview with Powell on May 22, 2000. Three days after the interview, Powell telephoned Hao, stating that he would like to confer with her alone at her residence regarding the details of her application. He said he had an offer for her that had to be kept secret between them. She agreed to meet him on June 4.

Before the meeting, Hao called her lawyer. Already alerted by Lu, the lawyer contacted the Justice Department, which in turn arranged for Hao to be wired for her meeting with Powell.

On June 4, Powell arrived at Hao's residence. He began to tell her of problems in her application for asylum. Powell said they could be solved if she paid him $2,000. He offensively touched private parts of her body. They agreed to meet again on June 8 for Powell to collect the money. On June 8, Hao was again wired. Powell returned to get the $2,000 and received it. He again engaged in sexual molestation of the asylum applicant.

As a result of the sting, the United States indicted Powell for his misconduct with both women. August 10, 2004, Powell was convicted by a jury of deprivation of Lu's civil rights under color of law in violation of 18 U.S.C. § 242 and on November 20 was sentenced to imprisonment of one year. He was also convicted of seeking bribes from both Lu and Hao in violation of 18 U.S.C. § 201(B)(2)(A) and was sentenced to a term of three years and nine months, to run concurrently with the first sentence. Powell died in prison not long after his incarceration and prior to the resolution of his appeal. As a result, his conviction was vacated and the indictment against him was dismissed.

## PROCEEDINGS

February 23, 2001, Lu and Hao filed this action against Powell; his supervisor, Robert Looney; his employer, the United States; and ten unknown agents of the United States. The district court dismissed several counts, giving plaintiffs leave to amend. The action was stayed during the pendency of the criminal case against Powell. After further amendments by the plaintiffs and rulings by the district court, Looney settled, the unknown agents were dismissed by stipulation, and on July 1, 2008, the district court entered final judgment against the plaintiffs for failure to state a cause of action under the FTCA.

August 27, 2008, this appeal followed.

## ANALYSIS

*Jurisdiction and standard of review*. We have jurisdiction under 28 U.S.C. § 1291. We review de novo the dismissal for failure to state a claim. *Cervantes v. United States*, 330 F.3d 1186, 1187 (9th Cir. 2003).

**[1]** *Criteria*. Under the FTCA, the United States is only liable "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Both sides discuss *Mary M. v. City of Los Angeles*, 814 P.2d 1341 (Cal. 1991), which involved a Los Angeles police officer who, while on duty, raped a woman. Because it involved a public employer, *Mary M.* "provides less than compelling precedent," *Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*, 907 P.2d 358, 366 (Cal. 1995), for weighing the liability of private employers, as we must under 28 U.S.C. § 1346(b)(1). A public-entity case, however, can offer some guidance, to the extent it illuminates general principles of respondeat superior liability that apply in California to public and private employers alike. *See Mary M.*,

814 P.2d at 1344 ("[T]he Legislature incorporated general standards of tort liability as the primary basis for respondeat superior liability of public entities" and "[c]ourts have construed the term 'scope of employment' [in public-entity cases] as broadly as in private tort litigation") (internal quotation marks omitted). We do not rely on *Mary M.* here, because liability in that case depended on "the unique authority vested in police officers." *Lisa M.*, 907 P.2d at 366 (quoting *Mary M.*, 814 P.2d at 1350 n.11). We must look, instead, to principles of respondeat superior liability that apply to private entities. *See United States v. Olson*, 546 U.S. 43, 45-46 (2005).

**[2]** According to the statute governing the liability of the United States, the United States is liable "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. "Like circumstances" are not "identical circumstances." Congress did not require a claimant to point to a private person performing a governmental function. *Indian Towing Co. v. United States*, 350 U.S. 61, 64-65 (1955) (plaintiff suing the United States for negligent operation of lighthouse does not need to find a private person operating a lighthouse; all the plaintiff needs is an analogous situation where a private person undertakes to warn the public of danger, inducing reliance on this undertaking). So in *United States v. Olson* it was held sufficient to state a claim under the FTCA that analogies to federal mine inspectors existed in private persons who are employed to conduct safety inspections. *Olson*, 546 U.S. at 47. Analogy not identity of circumstance is key.

**[3]** The jurisdictional statute does require that acts for which the United States as employer is to be held liable be performed by an employee "acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). This phrase must be applied according to the law of the state where the alleged tort occurred. *Williams v. United States*, 350 U.S. 857 (1955).

**[4]** *The scope of Powell's employment.* The nub of the district court's decision to dismiss was its conclusion that Powell in his interactions with Lu and Hao was not acting within the scope of his employment as an asylum officer. Obviously the United States had not employed him to prey on asylum petitioners or seek graft from their perilous predicaments. Self-evidently, it may have seemed, an asylum officer gone bad had stepped out of his assigned job in order to become a predator.

**[5]** The district court correctly stated the traditional rule. *See* Restatement (Second) of Agency § 228 (1958). The district court, however, took insufficient account of the California variation of the general rule. As put by Justice Werdegar: "California no longer follows the traditional rule that an employee's actions are within the scope of employment only if motivated, in whole or part, by a desire to serve the employer's interests. " *Lisa M.*, 907 P.2d at 361. Although "somewhat surprising on first encounter," the principle is "well established" that "an employee's willful, malicious and even criminal torts may fall within the scope of his or her employment for purposes of respondeat superior, even though the employer has not authorized the employee to commit crimes or intentional torts." *Id.* at 360-61.

**[6]** The resulting rule in California has been formulated as a form of enterprise liability. The court looks to the foreseeability of the employee's conduct, whether it be authorized or unauthorized, tortious or criminal, because the California rule "reflects the central justification for respondeat superior [liability]: that losses fairly attributable to an enterprise — those which foreseeably result from the conduct of the enterprise — should be allocated to the enterprise as a cost of doing business." *Farmers Ins. Group v. County of Santa Clara*, 906 P.2d 440, 448 (Cal. 1995).

The authoritative statement of the California rule was made by Justice Traynor in *Carr v. Wm. C. Crowell Co.*, 171 P.2d

5 (Cal. 1946). The employer was held liable for the actions of an employee who threw a hammer at the head of a fellow worker whose conduct had irritated him. *Id.* at 7. "Such injuries," Justice Traynor wrote, "are one of the risks of the enterprise." *Id.* When employing others, the employer takes on associations with them that "include the faults and derelictions of human beings." *Id.* " 'The risks of such associations and conditions were risks of the employment.' " *Id.* (citing Judge Benjamin Cardozo in *Leonbruno v. Champlain Silk Mills*, 128 N.E. 711, 711 (N.Y. 1920)).

A nexus must exist between the employment and the tort if the employer is fairly to be held liable. As put by Justice Werdegar in *Lisa M.*, the tort must be "generally foreseeable" or "engendered by" or "arise from" the employment. *Lisa M.*, 907 P.2d at 362. No employer instructs an employee to throw a hammer at a co-worker who displeases him. The tort in *Carr* grew out of the situation in which the work was performed, the jostle of one man on another, and the uncontrolled anger of the tortfeasor, motivated by no end other than to vent his anger. *See Carr*, 171 P.2d at 7.

*Lisa M.* itself draws a helpful line. In that case a technician employed by the hospital to give a pregnant patient an ultrasound examination of her abdomen completed the examination and then returned to the patient's room and molested her sexually. *Lisa M.*, 907 P.2d at 360. As a matter of law, the technician's assault did not create liability on the part of the hospital which employed him. *Id.* at 363-64.

*Lisa M.* rejected as an argument for the hospital's liability that the abused patient was especially vulnerable in the way that all hospitalized patients are helplessly in the hands of those attending them. *Lisa M.*, 907 P.2d at 365 n.6. For that reason we do not emphasize the particular vulnerability of Lu and Hao, foreigners fearing persecution if sent back. The liability of a private employer in California does not turn on the

vulnerability of the victim but on the extent to which the tort of the employee is incident to his employment. *See id.* at 362.

In reaching the conclusion in *Lisa M.*, Justice Werdegar set out the three considerations of policy that support the rule of respondeat superior: (1) to increase the vigilance and precautions of the employer; (2) to insure compensation for the injury; and (3) to spread the risk of loss. *Id.* at 366. The court was unable to say that those goals would be realized by imposing liability on the hospital. *Id.* Two justices (Mosk and Kennard) disagreed with this conclusion and would have gone further to posit liability. *Id.* at 368-73.

Reversing a trial court's holding that a licensed real estate broker's submission of a fraudulent loan application was not within the scope of his employment, a California court of appeal applied *Lisa M.*, quoting verbatim its statement that the employee's actions need not benefit the employer in order to create vicarious liability. *Inter Mountain Mortgage, Inc. v. Sulimen*, 93 Cal. Rptr. 2d 790, 794 (Cal. Ct. App. 2006). The court of appeal noted that throughout the transaction the broker, acting to enrich himself, represented himself as the agent of the employer providing the documentation necessary for the loan. *Id.* at 796. The risk of a fraudulent application was "a generally foreseeable risk inherent and incidental to defendants' mortgage loan brokerage business." *Id.*

**[7]** Like the loan broker, Powell was part of a process in which he was expected to participate in a lawful way, reviewing the documentation of the asylum applicant, interviewing her, and assessing the credibility of her claims. Like the loan broker, Powell abused his powers for his own benefit. In doing so, he acted within the scope of his employment as defined by California. To compensate his victims, spread the loss, and stimulate the government to greater vigilance in controlling aberrant behavior, California law makes the United States bear the cost of Powell's conduct, unauthorized but incidental to the asylum system.

*The viable tort claims*. The plaintiffs point to two causes of action where a private party would be liable for the wrongful act of his employee, one under California common law, the other under a California statute. We consider them in turn.

The dissent focuses on torts against employees engaging in "sexual misconduct." The torts for which the plaintiffs may be compensated by Powell's employer are the infliction of emotional distress and interference with their civil rights.

**[8]** (1) Infliction of emotional distress. This tort at common law is distinct from assault or battery. It may be committed intentionally or recklessly. *See Cervantez v. J. C. Penney Co.*, 595 P.2d 975, 983 (Cal. 1979); *Tekle v. United States*, 511 F.3d 839, 855 (9th Cir. 2007). An employer can be held liable for its infliction by an employee in the course of his employment. *See Flores v. Autozone West, Inc.*, 74 Cal. Rptr. 3d 178, 179-180, 188 (Cal. Ct. App. 2008). In our case, if the alleged facts are proved, it was committed by Powell in each instance in which he demanded money or sexual gratification from Lu or Hao as a condition for exercising his discretion in favor of asylum.

The United States is immune from liability for an assault or battery by its employee. 28 U.S.C. § 2680(h). The alleged touchings of the women were batteries and the sexual character of these offenses may not change their gravamen. We need not decide that question. The emotional distress suffered as a result of the demand for sexual favors is an injury distinct from the battery and may be proved by the plaintiffs.

**[9]** (2) Interference with the civil rights of the plaintiffs. California Civil Code § 52.1 provides that if a person interferes, or attempts to interfere, by threats, intimidation, or coercion with the exercise or enjoyment of the constitutional or statutory rights of any individual, the individual may sue for damages independently of any other action that is available. Cal. Civil Code § 52.1(a)-(b); *Stamps v. Superior Court*,

39 Cal. Rptr. 3d 706, 707-08 (Cal. Ct. App. 2006) (suit against private employer). On the facts alleged, Powell attempted such interference with the plaintiffs' right to asylum.

[10] *The claims barred by the FTCA*. The plaintiffs allege that the United States was negligent in its employment of Powell. They point to the deposition of another employee in the asylum office stating that Powell, contrary to regulations, retained an asylum file for over 400 days. The deposition is not enough to show that the United States was negligent in not detecting Powell's predatory conduct. The United States cannot be held liable under the FTCA "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government." 28 U.S.C. § 2680(a); *see Terbush v. United States*, 526 F.3d 1125, 1128-29 (9th Cir. 2008). The treatment of Powell for his violation of the regulation lay within the discretion of his supervisor. The United States is not liable for the exercise of that discretion. *Nurse v. United States*, 226 F.3d 996, 1001-02 (9th Cir. 2000). The discretionary function exception does not apply to "[a]n action specifically prescribed by a federal statute, regulation, or policy," because such an action is not within an agent's discretion. *Marlys Bear Med. v. United States*, 241 F.3d 1208, 1213 (9th Cir. 2001) (internal quotation omitted). The plaintiffs have not identified any mandatory duty to discipline Powell for retaining the file. Nor have they pointed to any specific duty under the Fifth Amendment or any specific policy to support a claim of unconstitutional policymaking. *See Nurse*, 226 F.3d at 1002.

[11] The plaintiffs' claim under 8 C.F.R. § 208.9 was properly dismissed; it was not a claim for which California law would provide a remedy against a private party. The plaintiffs' claim under Article 1 § 7 of the California Constitution does not state a claim for damages under California

law. *Katzberg v. Regents of University of California*, 58 P.3d 339, 358 (Cal. 2002).

## CONCLUSION

For the reasons stated, the order of the district court is AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings.

---

BYBEE, Circuit Judge, concurring in part, dissenting in part:

I agree with the majority that "[t]he United States is immune from liability for an assault or battery by its employee," Maj. Op. at 13356, and that the district court therefore properly dismissed Lu's assault and battery claims against the United States. In addition, I agree with the majority that 28 U.S.C. § 2680(a), the Federal Tort Claims Act discretionary function exception, bars Lu's claim that the United States was negligent in its employment of Powell because the "treatment of Powell for his violation of the regulation lay within the discretion of his supervisor[, and t]he United States is not liable for the exercise of that discretion." Maj. Op. at 13357.

I disagree, however, with the majority's conclusion that when Powell solicited sex and money from Lu in exchange for asylum, he acted within the scope of his employment under California law. The California Supreme Court has held that a deputy sheriff who "lewdly propositioned and offensively touched" a co-worker was not within the "scope of his . . . employment as an employee of [a] public entity," *Farmers Ins. Group v. Santa Clara*, 906 P.2d 440, 444 (Cal. 1995), and California has generally refused to hold employers liable for the sexual misconduct of their employees. *See, e.g.*, *Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*, 907 P.2d 358 (Cal. 1995); *M.P. v. City of Sacramento*, 98 Cal. Rptr. 3d 812, 814 (Ct. App. 2009). Because I do not believe that California

would hold an employer liable under the circumstances of this case, under the Federal Tort Claims Act (FTCA), the United States is not liable "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). I respectfully dissent from the majority's decision to allow Lu's intentional infliction of emotional distress and California Civil Code § 52.1 claims to go forward.

I

The FTCA provides a limited waiver of the sovereign immunity of the United States "for injury or loss of property . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Under 28 U.S.C. § 2680(h), however, the United States is not liable for "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." Notably absent from this list, for our purposes, is intentional infliction of emotional distress. Although "a claim based on conduct constituting the tort of intentional infliction of emotional distress is not excluded . . . by § 2680(h)," it is barred by § 2680(h) if "in substance the conduct relied upon constituted a specifically excluded tort." *Sheehan v. United States*, 896 F.2d 1168, 1172 (9th Cir. 1990)*; see also Sabow v. United States*, 93 F.3d 1445, 1456 (9th Cir. 1996) ("We focus our § 2680(h) inquiry on whether conduct that constitutes an enumerated tort is 'essential' to a plaintiff's claim.").

In order for the United States to be vicariously liable for Powell's actions, Powell must have intentionally inflicted emotional distress[1] on Lu or deprived her of rights secured by

---

[1]In the vast majority of cases, the claim of intentional infliction of emotional distress will arise from one of the barred enumerated torts like

the Constitution or the laws of the United States, Cal. Civ. Code § 52.1(a), "while acting within the scope of his office or employment" as an asylum officer "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). In this case, Powell's actions occurred in California, so California's principles of respondeat superior control. *See Id.* The majority holds that the United States, if it were a California employer, would be liable for Powell's actions. I respectfully disagree with the majority's assessment of California's law.

Under California law, an employer can be held liable for the wilful and malicious torts committed by its employees if an employee commits the tort in the scope of his or her employment. This is true even if the tort was not done as "a means, or for the purpose of performing the work [the employee] was employed to do." *Carr v. Wm. C. Crowell Co.*, 171 P.2d 5, 7 (Cal. 1946). *In Carr*, the California Supreme Court held that an employer was liable for injury caused when its employee threw a hammer at a co-worker. *Id.* The court concluded that by "bringing men together" the employer had "create[d] occasions for lapses into carelessness, and for fun-making and emotional flareup. . . . These expressions of human nature are incidents inseparable from working together. They involve risks of injury and these risks are inherent in the working environment." *Id.* at 8.

---

assault, battery, false arrest, libel, deceit, or misrepresentation and there-fore be barred under the FTCA as well. But this case presents a unique set of facts. Even though Lu abandoned her suit against the United States based on Powell's alleged battery and sexual assault, on appeal, Lu argues that her claim of intentional infliction of emotional distress is still viable because it is grounded on Powell's request for money and sexual favors. Reply Br. at 4 n.1. Because bribery by a public official is not listed in 28 U.S.C. § 2680(h) and does not fairly fall within any of the excluded cate-gories, I agree with the majority that Lu's claim that Powell intended to cause her emotional distress by requesting sex and money in return for asylum is not statutorily barred by 28 U.S.C. § 2680(h).

*Carr*'s virtually unworkable holding—that is, "boys will be boys" and the employer is responsible for their "expressions of human nature" because the employer created a "working environment"—has been explained and modified by more recent California Supreme Court decisions. "[N]otwithstanding the generally broad view given to scope of employment determinations," the California Supreme Court has said, "the law is clear that an employer is not strictly liable for all actions of its employees during working hours. Significantly, an employer will not be held vicariously liable for an employee's malicious or tortious conduct if the employee substantially deviates from the employment duties for personal purposes." *Farmers Ins. Group*, 906 P.2d at 449 (emphasis omitted). *In Lisa M.*, the court explained that the principle of respondeat superior is limited by the element of foreseeability: An employer is only liable when, considering the enterprise's operations, the risk of injury is generally foreseeable:

> the employer will not be held liable for an assault or other intentional tort that did not have a causal nexus to the employee's work. . . . An act serving only the employee's personal interest is less likely to arise from or be engendered by the employment than an act that, even if misguided, was intended to serve the employer in some way. . . . That the employment brought tortfeasor and victim together in time and place is not enough. . . . [T]he risk of tortious injury must be inherent in the working environment or typical of or broadly incidental to the enterprise the employer has undertaken.

*Lisa M.*, 907 P.2d at 361-62 (quotation marks omitted). *Lisa M.* involved a sexual tort, and with respect to sexual torts in particular, the court held that "a sexual tort will not be considered engendered by the employment unless its motivating emotions were fairly attributable to work-related events or conditions. . . . If the assault was . . . the result of only propin-

quity and lust, there should be no liability." *Id.* at 364 (quotation marks and omission omitted).

With the foregoing principles in mind, I turn to the question of whether Powell acted within the scope of his employment when he traveled to Lu's home and requested sexual favors and money in return for recommending that the United States grant her asylum. As an asylum officer, Powell's duties were set out in (then) INS's regulations. Such officers were "delegated the authority to hear and adjudicate credible fear of persecution determinations . . . [and] applications for asylum . . . ." 8 C.F.R. § 103.1(g)(3)(ii) (2000). "An asylum officer may grant asylum in the exercise of discretion to an applicant who qualifies as a refugee . . . . [T]he asylum officer shall either grant asylum or refer the application to an immigration judge for adjudication in deportation, exclusion, or removal proceedings. An asylum officer may refer such an application after an interview. . . ." 8 C.F.R. § 208.14(b) (2000). An asylum officer must "conduct the interview in a nonadversarial manner and, except at the request of the applicant, separate and apart from the general public." 8 C.F.R. § 208.9(b)(2000). During the interview, an asylum officer has "authority to administer oaths, verify the identify of the applicant . . . present and receive evidence, and question the applicant and any witnesses." *Id.* § 208.9(c). In considering whether to grant an applicant asylum, "[t]he asylum officer shall consider evidence submitted by the applicant together with his or her asylum application . . . ." *Id.* § 208.9(e).

Powell's actions (well described by the majority) were plainly outside his regular duties, and for that, Powell was convicted of bribery by a public official under 18 U.S.C. § 201(b)(2)(A) and deprivation of rights under color of law under 18 U.S.C. § 242. Notwithstanding the fact that Powell's employer, the United States, brought charges against Powell and convicted him of two felonies, Lu argues that Powell was acting within the scope of his employment when he committed his criminal acts. Intuitively, I cannot see how an act crim-

inally punishable by the United States can possibly be considered within the scope of Powell's employment as an asylum officer. Moreover, I do not think California's law is to the contrary. I thus agree with the majority that "Powell abused his powers for his own benefit," but I disagree that "[i]n doing so, he acted within the scope of his employment as defined by California." Maj. Op. at 13355.

II

California has had substantial experience with suits against employers based on employee sexual misconduct. In *Lisa M.*, an ultrasound technician sexually assaulted a patient ten minutes after conducting the patient's ultrasound examination. 907 P.2d at 359. The California Supreme Court held that the hospital was not vicariously liable for the technician's assault. The court reasoned that the ultrasound technician was not acting within the scope of his employment when he assaulted the patient because "the technician's decision to engage in conscious exploitation of the patient did not arise out of the performance of the examination, although the circumstances of the examination made it possible." *Id.* at 364 (emphasis omitted). The technician's "personal motivations" to assault the patient "were not generated by or an outgrowth of workplace responsibilities, conditions or events." *Id.*

In *Farmers Insurance Group*, the California Supreme Court similarly held that a sheriff's "lewd[ ] proposition[s to] and offensive[ ] touch[ings]" of a co-worker did not arise within the "scope of his . . . employment as an employee of [a] public entity." 906 P.2d at 444. The court in *Farmers Insurance Group* found that the deputy sheriff was not acting within the scope of his employment when he asked his subordinate for sexual favors and offensively touched her because "the deliberate targeting of an individual employee by another employee for inappropriate touching and requests for sexual favors is not a risk that may fairly be regarded as typical of or broadly incidental to the operation of a county jail." *Id.*

Even though there was evidence that sexually explicit banter was common among employees at the jail, the court refused to hold that the deputy's requests for sex from a subordinate were "broadly incidental" to his tasks and duties. *Id.* at 454.

These cases are typical of the host of California cases where the court refused to hold employers—public[2] and private—liable for the sexual torts committed by their employees. *See, e.g., M.P.*, 98 Cal. Rptr. 3d at 815 (City of Sacramento not vicariously liable for claims of assault, battery, and intentional infliction of emotional distress after two firefighters (one on-duty at the time) assaulted a woman during the Porn Star Costume Ball); *Maria D. v. Westec Residential Sec., Inc.*, 102 Cal. Rptr. 2d 326 (Ct. App. 2000) (security company not vicariously liable for on-duty security guard's rape of a motorist)*; Jeffrey E. v. Cent. Baptist Church*, 243 Cal. Rptr. 128 (Ct. App. 1988) (protestant church not vicariously liable for assault, battery, and intentional infliction of emotional distress of a minor after Sunday school teacher molested minor); *Rita M. v. Roman Catholic Archbishop*, 232 Cal. Rptr. 685 (Ct. App. 1986) (archbishop not vicariously liable for sexual relations between seven priests and minor parishioner); *Alma W. v. Oakland Unified Sch. Dist.*, 176 Cal. Rptr. 287 (Ct. App. 1981) (school district not vicariously liable for rape of a student by a janitor). In a few cases, Califor-

---

[2]The majority suggests that California's public entity respondeat superior cases are not analogous to private employer respondeat superior cases. *See* Maj. Op. at 13351 ("Because it involved a public employer, *Mary M.* provides less than compelling precedent." (citation and quotation marks omitted)). I see no discernable difference in California's treatment of public and private employers. In both private sector and public employer cases, California courts have applied general principles of respondeat superior. *See Mary M. v. City of Los Angeles*, 814 P.2d 1341, 1344 (Cal. 1991) ("[T]he Legislature incorporated general standards of tort liability as the primary basis for respondeat superior liability of public entities," and "[c]ourts have construed the term 'scope of employment' in section 815.2 [the section that makes public entities liable for the torts of an employee] as broadly as in private tort litigation." 814 P.2d 1341, 1344 (Cal. 1991) (quotation marks omitted).

nia courts have held that an employee's sexual propositions or sexual assault were "broadly incidental" to the employee's duties, but the courts in these cases focused on the unique authority of police officers or the special relationship between clients and therapists. *See, e.g.*, *Mary M. v. City of Los Angeles*, 814 P.2d 1341 (Cal. 1991) (city could be vicariously liable for an on-duty police officer's rape of a woman); *Richard H. v. Larry D.*, 243 Cal. Rptr. 807 (Ct. App. 1988) (clinic could be vicariously liable for fraud, negligence, and negligent infliction of emotional distress where marriage therapist who was the head of the psychiatric department had sexual relations with the wife of a couple he was counseling); *White v. County of Orange*, 212 Cal. Rptr. 493 (1985) (county could be vicariously liable for deputy sheriff's threats to rape a motorist).[3]

---

[3]There is, admittedly, some tension between the California Supreme Court's decision in, *Mary M.*, 814 P.2d 1341, and its subsequent decisions —tension that has been noted by the California courts themselves. In *Mary M.*, the California Supreme Court held that rape was within the scope of an on-duty police officer's employment and that the city was liable. The court "stress[ed] that [its] conclusion . . . flow[ed] from the unique authority vested in police officers. Employees who do not have this authority and who commit sexual assaults may be acting outside the scope of their employment as a matter of law." *Id.* at 1350 n.11. The California Supreme Court seemed to limit *Mary M.*'s holding to sexual assault by on-duty police officers in *Farmers Insurance Group*, 906 P.2d at 450. *See id.* ("[E]xcept where sexual misconduct by on-duty police officers against members of the public is involved, the employer is not vicariously liable to the third party for such misconduct." (citation omitted)); *see also Lisa M.*, 907 P.2d at 366 (stating that *Mary M.* provides "less than compelling precedent for liability" because the court "expressly limited [*Mary M.*'s] holding" to on-duty police officers); *M.P.*, 98 Cal. Rptr. 3d at 814-15 ("It is questionable whether the holding in *Mary M.* is still viable. . . . [W]e conclude that the *Mary M.* holding that a public employer of a police officer may be vicariously liable for a sex crime committed by the officer against a person detained by the officer while on duty is, at best, limited to such acts by an on-duty police officer and does not extend to any other form of employment."). Because Powell was not a police officer acting within the scope of his employment, *Mary M.* has little relevance to the present case.

The majority relies on *Inter Mountain Mortgage, Inc. v. Sulimen*, 93 Cal. Rptr. 2d 790 (Ct. App. 2000), to hold that Powell acted within the scope of his employment when he requested sex and money from Lu. Maj. Op. at 13355. In *Sulimen*, the court held a mortgage company vicariously liable for an employee's fraud. The employee, a mortgage broker, submitted fraudulent paperwork under the name of the employer and represented to the client that he was fulfilling his job duties as a loan broker in submitting the paperwork. *Id.* at 795. The court found that because he held himself out as an employee of his employer when he committed the fraud, a triable issue of fact existed as to whether he was acting within the scope of his employment. *Id.* at 796. The court reasoned, "the risk of one of defendants' loan representatives submitting a fraudulent loan application . . . was a generally foreseeable risk inherent and incidental to defendants' mortgage loan brokerage business." *Id.*

Although *Sulimen* could be read to support the argument that Powell was acting within the scope of his employment when he solicited sex and money from an asylum applicant, I do not believe such a reading is necessary. Powell's request is not a "generally foreseeable risk inherent and incidental" to the United States asylum system. *Id.* Again, the California Supreme Court sexual misconduct cases are more directly on point here. Just as it was not a generally foreseeable risk that an ultrasound technician would exploit a patient ten minutes after finishing her examination, it was not foreseeable that Powell would exploit an asylum applicant several days after conducting her official asylum interview. His actions of going to Lu's house and requesting sex and money for asylum were unrelated to his responsibility to only "consider evidence submitted by the applicant" in deciding whether to grant asylum. 8 C.F.R. § 208.9(e) (2000). Like the deputy sheriff in *Farmers Insurance Group* who "lewdly propositioned" a subordinate, Powell "lewdly propositioned" an asylum applicant, but such actions were for his own personal reasons and not within the scope of his employment as an asylum officer. On the

whole, California cases support the conclusion that when Powell requested that Lu give him money or sex in exchange for asylum, he substantially deviated from his duties as an asylum officer and acted as a "result of only propinquity and lust." *Lisa M.*, 907 P.2d at 364.

## III

California cases also make clear that Powell was not acting within the scope of his employment by the mere fact that his position as an asylum officer brought him into contact with Lu. "If an employee's tort is personal in nature, mere presence at the place of employment and attendance to occupational duties prior or subsequent to the offense will not give rise to a cause of action against the employer under the doctrine of respondeat superior." *Farmers Ins. Group*, 906 P.2d at 450 (quotation marks and alteration omitted). In *Lisa M.*, the court concluded that even though the "hospital, by employing the technician and providing the ultrasound room may have set the stage for [the technician's] misconduct, . . . the script was entirely of his own, independent invention" and that it would be "unfair and inconsistent with the basic rationale of respondeat superior to impose liability on [the] [h]ospital irrespective of its own negligence." *Lisa M.*, 907 P.2d at 367. Even though Powell had the opportunity to exploit Lu by virtue of his position as an asylum officer, that fact alone does not make his personal request for sex and money fall within the scope of his employment.

In addition, although Powell had the authority to grant Lu asylum, this authority was not enough to bring his tortious action within the scope of his employment under California case law. In *John R. v. Oakland Unified School District*, 769 P.2d 948 (Cal. Ct. App. 1989), parents of a fourteen year-old junior high school student sued the school district under the doctrine of respondeat superior when one of its school teachers sexually molested the student while the student was at the teacher's apartment participating in an officially sanctioned

extracurricular program. The parents argued that the teacher acted within the scope of his employment because "the teacher used his authority to obtain [their son's] participation in the extracurricular program and thereby obtained the boy's presence at the teacher's home away from other eyes." *Id.* at 955. Despite the fact that the teacher invoked his authority to get the boy alone at his house for an approved extracurricular program and told the boy that sex was part of the teacher-student relationship, the court refused to find that the teacher acted within the scope of his employment. The court concluded, "[t]he teacher's authority . . . is simply not great enough to persuade us that vicarious liability should attach here for the teacher's tort." *Id.* at 956-57.

Here, Powell arguably asserted his authority as an asylum officer to request sex and money in exchange for granting asylum. But his authority to grant or deny Lu's asylum application does not persuade me that vicarious liability should attach to the United States for Powell's lewd and selfish conduct. Even though the teacher in *John R.* lured a student to the teacher's house under the auspices of an official extracurricular program, the court declined to find that the teacher acted within the scope of his employment. Likewise, the fact that Powell used his authority to come over to the Lu's home does not make his subsequent criminal activity fall within the scope of his employment.

IV

Because Powell was not acting within the scope of his employment, the United States is not vicariously liable for Lu's claims that Powell inflicted emotional distress on her or that he interfered with her rights under California Civil Code § 52.1. I respectfully dissent from that portion of the majority's opinion and judgment.