Dissent by Judge SMITH
*917 OPINION
OWENS, Circuit Judge:
Phillip Garrido, a parolee with a terrible history of drug-fueled sexual violence, committed unspeakable crimes against Jaycee Dugard for 18 years. State and federal authorities missed many opportunities to stop these tragic events. Ms. Du-gard received a large cash settlement from the State of California for its incompetence, and seeks similar compensation from the Federal Government.
While our hearts are with Ms. Dugard, the law is not. We agree with the district court that the Federal Tort Claims Act and its interaction with California law precludes her recovery for the incompetence of the parole office that was supposedly supervising Garrido. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.
I. FACTS AND PROCEDURAL HISTORY
A. Garrido’s Criminal History, Convictions, and Kidnapping of Du-gard
The sickening circumstances of this case have been detailed many times in various forms, so we limit our discussion to the essential facts.
Garrido’s predatory pattern of sexual abuse, often in conjunction with drug use, began in the 1970s. In 1972, he was arrested, though not convicted, for drugging and raping a juvenile. He was using LSD and marijuana during this time. In 1976, Garri-do was charged with kidnapping and raping a woman in South Lake Tahoe, California.
That same year, Garrido kidnapped a second woman in South Lake Tahoe, California, and drove her into Nevada, where he hid her in a shed and raped her. He was charged in federal court with kidnapping, and was convicted and sentenced to 50 years imprisonment in 1977. During his trial, Garrido testified and explained that, while under the influence of drugs, he had uncontrollable deviant and violent sexual compulsions. In 1988, he was released on federal parole. His federal parole was set to expire in March 1999, after which the State of California would take over supervision.[1]
Due to his history of sexual violence while intoxicated, Garrido’s federal parole terms required him to undergo regular drug testing and counseling. They also banned drug use and excessive alcohol consumption. Parole officers recognized that “the potential for causing great physical harm is present if [Garrido] becomes unstable as a result of drug use.” Medical professionals described him as “a time bomb” and “like a pot boiling with no outlet valve.” Despite these prophetic warnings and mandatory reporting obligations, in the 80 months after his release on parole, officers did not report approximately 70 documented drug-related parole violations, including methamphetamine abuse, to the Parole Commission. These violations included Garrido drinking exces *918 sive amounts of water to dilute urine samples used in drug tests.
On June 10, 1991, while Garrido was on federal parole, Garrido and his wife kidnapped Dugard near her home in South Lake Tahoe.[2] She was only 11. For the next 18 years, Garrido held Dugard captive, sometimes in chains, in a shed that he built in his backyard. Often on methamphetamine binges, he repeatedly raped and drugged her. Dugard gave birth to two of his children without any medical treatment or prenatal care. Dugard and her children remained captive until their discovery on August 26, 2009.
B. Proceedings Before the District Court[3]
In September 2011, Dugard filed a complaint against the United States under the Federal Tort Claims Act (FTCA), on her own behalf and as guardian for her two minor children (A. Dugard and G. Du-gard).[4] In December 2012, Dugard filed a Second Amended Complaint. In it, she alleged that the government negligently performed numerous mandatory duties when supervising Garrido, including duties to report parole violations in the years prior to her kidnapping. But for the government’s negligence, she alleged, Garrido’s parole would have been revoked and he would not have been able to kidnap her in 1991.
Following discovery, the government filed a motion to dismiss and for summary judgment. The government argued that the FTCA bars Dugard’s claims because there is no liability for private individuals in like circumstances under California law, as required to sustain an FTCA claim under 28 U.S.C. § 2674.[5]
The district court granted the motion, finding that the proper state-law analogy to the government officials in this case was to private parties providing criminal rehabilitative services. California law holds that such private parties “do not owe a duty of reasonable care to control others to the entire world or to the general public.” Instead, “such duty of reasonable care to control is owed by such rehabilitative service providers only to a very small group of specifically identifiable and foreseeable victims.” Since Dugard did not allege that she was a specifically identifiable victim, the “United States owed no duty of reasonable care to Plaintiffs in this case.”
II. DISCUSSION
A. Standard of Review
We review de novo a district court’s dismissal of an FTCA claim because a private person under like circumstances would not be liable under state law. Xue Lu v. Powell, 621 F.3d 944, 947 (9th Cir. 2010).
B. The FTCA Forecloses Federal Liability In This Case
The FTCA, a limited waiver of the United States’ sovereign immunity, pro *919 vides that the United States shall be liable “in the same manner and to the same extent as a private individual under like circumstances” under applicable state law. 28 U.S.C. § 2674; see also id. § 1346(b)(1). Although the federal government “could never be exactly like a private actor, a court’s job in applying the standard is to find the most reasonable analogy.” LaBarge v. Mariposa Cty., 798 F.2d 364, 367 (9th Cir. 1986).
The most analogous cases to this situation involve the liability of private criminal rehabilitation facilities. Under California law, private companies that operate rehabilitation programs do not owe a duty of care to the public at large for the conduct of inmates or parolees under their supervision. See Cardenas v. Eggleston Youth Ctr., 193 Cal.App.3d 331, 238 Cal.Rptr. 251, 252-53 (1987) (holding that a private rehabilitation facility owes no duty of care to “members of the community in which it is located for the criminal conduct of its residents”); Beauchene v. Synanon Found., Inc., 88 Cal.App.3d 342, 151 Cal. Rptr. 796, 798-99 (1979) (holding that a private rehabilitation center owed no duty to the plaintiff to control the behavior of a convict who escaped the facility and shot the plaintiff). Instead, the private facilities owe a duty only to individuals that are foreseeable and specifically identifiable victims of their wards’ conduct. See Yu v. Singer Co., 706 F.2d 1027, 1029 (9th Cir. 1983) (discussing the duty to warn under California law and concluding that it “clearly'’ requires a “foreseeable and specifically identifiable” victim); Rice v. Ctr. Point, Inc., 154 Cal.App.4th 949, 65 Cal.Rptr.3d 312, 316 (2007) (explaining that a duty exists only where the “injury is foreseeable and the intended victim is identifiable”). This rule is a result of California’s strong public policy to encourage “innovative criminal offender release and rehabilitation programs.” Beauchene, 151 Cal.Rptr. at 799.
As Dugard has not argued, and submits no facts to suggest, that she was a specifically identifiable victim, she would not have a viable claim against an analogous private person under California law.
Dugard contends that Beauchene, Cardenas, Rice, and Vu are inappropriate private person analogues because the duties described therein originally arose out of a statutory immunity granted only to public entities — Cal. Gov. Code Section 845.8.[6] As she puts it, using these cases to locate the most analogous private parties “backdoor[s] inapplicable state government immunities into the FTCA analysis.” As support, she points to the Supreme Court’s instruction that the United States’ liability under the FTCA may not be defined by reference to the liability of state or local entities. See United States v. Olson, 546 U.S. 43, 45, 126 S.Ct. 510, 163 L.Ed.2d 306 (2005) (rejecting argument that the federal government’s liability should be compared to the liability of state and local mine inspectors); Rayonier Inc. v. United States, 352 U.S. 315, 318-19, 77 S.Ct. 374, 1 L.Ed.2d 354 (1957) (rejecting argument that the federal government’s liability should be determined by the liabil *920 ity of state and local firefighters); Indian Towing Co. v. United States, 350 U.S. 61, 65, 76 S.Ct. 122, 100 L.Ed. 48 (1955) (rejecting argument that the federal government’s liability should be compared to the liability of a municipal corporation).
In locating an analogous private party under the FTCA, however, it is appropriate to look to cases involving public entities or public immunities, so long as the policies underlying them are applicable to private parties in the state as well. See Xue Lu, 621 F.3d at 947 (“A public-entity case ... can offer some guidance, to the extent it illuminates general principles of respondeat superior liability that apply in California to public and private employers alike.”). The public policy to limit the liability of institutions involved in criminal rehabilitative endeavors is one that California courts have expressly chosen to expand beyond public officials and apply to private parties involved in similar efforts. See Beauchene, 151 Cal.Rptr. at 799 (explaining that, although the defendant “con-cededly is not a ‘public entity or public employee’ ... the same public policy that moved the Legislature to immunize Public release and rehabilitation programs from liability to encourage such innovations in the interests of criminal justice compels the conclusion that [defendant’s] Private release and rehabilitation program owed no legal duty to” the plaintiff (emphasis added)); see also Vu, 706 F.2d at 1029-30; Rice, 65 Cal.Rptr.3d at 313; Cardenas, 238 Cal.Rptr. at 252-53. That application to private parties takes this case out of the ambit of Olson, Rayonier, and Indian Towing. Because the extent of the government’s liability under the FTCA is described with reference to state law, when the state has described a public policy for limiting liability for private parties, we expect the government’s liability under the FTCA will shrink as well. Cf. Anderson v. United States, 55 F.3d 1379, 1381 (9th Cir. 1995) (refusing to limit the liability of the government for the negligence of the U.S. Forest Service because California courts have “not described any such public policy in the area of firesetting and fire control by private persons” that would limit liability). Limiting liability here, for officials involved in the release and rehabilitation of criminal offenders, is consistent with California’s policies encouraging criminal rehabilitation for public and private parties alike.
The dissent agrees that due to the “imperative policy objective of encouraging innovative release and rehabilitation programs for criminal offenders,” California courts have limited the liability of private criminal rehabilitation centers. Dissent at 931 (quoting Cardenas, 238 Cal.Rptr. at 253); see also Dissent at---- (quoting Beauchene, 151 Cal.Rptr. at 799). We disagree only on whether that policy consideration is applicable to the government actors here. We hold that it is. The United States parole system dealt with “a wide range of individuals with differing problems.” Probation Division, Administrative Office of the United States Courts, The Supervision Process, Publication 106, at 21 (1983). Accordingly, like the criminal rehabilitative centers in Beauchene, Cardenas, Rice, and Vu, it furthered many different rehabilitative goals, including those “ranging] from protecting the public from further crime to providing the offender with'needed education, vocational training, medical care, and other correctional treatment.” Publication 106, at 1; see Vu, 706 F.2d at 1028 (“vocational training, work experience and educational programs”); Rice, 65 Cal.Rptr.3d at 313 (drug rehabilitation program); Cardenas, 238 Cal.Rptr. at 251 (youth group home facility); Beauchene, 151 Cal.Rptr. at 797 (drug and alcohol rehabilitation). Imposition of broader liability logically forces this range of goals *921 to shift to the former (protecting the public), and away from the latter (education, vocational training, medical, and correctional treatment). This force would disrupt the ability of probation officers to develop a “knowledgeable, sensitive, and flexible approach” suited to each offender, Publication 106, at 21, thereby discouraging “innovative” rehabilitative efforts and “encouraging the detention of prisoners in disregard of their rights and society’s needs.” Beauchene, 151 Cal.Rptr. at 799. The public policy concerns that militate against expansive liability for private criminal rehabilitation programs are therefore directly applicable here.
The dissent instead would have us rely on a line of California cases, particularly involving medical professionals, which has held that a doctor or therapist has a duty to act reasonably to avoid injury to a third party where a patient expresses an intent to harm or exhibits actions likely to cause harm to a third party (which need not be a foreseeable and specifically identifiable victim). See Bragg v. Valdez, 111 Cal.App.4th 421, 3 Cal.Rptr.3d 804, 810-11 (2003) (holding that a psychotherapist had a duty to the plaintiff not to discharge a mentally ill patient because of his lack of insurance, where patient killed plaintiff after discharge); Reisner v. Regents of Univ. of Cal., 31 Cal.App.4th 1195, 37 Cal.Rptr.2d 518, 520 (1995) (holding that the doctor had a duty to the future sexual partner of his teenage patient to warn the patient or “others likely to apprise the [plaintiff] of the danger” that his patient had likely been infected with HIV through a contaminated blood transfusion); Myers v. Quesenberry, 144 Cal.App.3d 888, 193 Cal.Rptr. 733, 734-35 (1983) (holding that a doctor had a duty to a driver struck by his patient’s car to warn his patient that she should not drive in an uncontrolled diabetic condition complicated by a recently lost pregnancy). These cases rely heavily on Tarasoff v. Regents of University of California, 17 Cal.3d 425, 131 Cal.Rptr. 14, 551 P.2d 334 (1976), a landmark case in which the California Supreme Court held that, “[w]hen a therapist determines ... that his patient presents a serious danger of violence to another, he incurs an obligation to use reasonable care to protect the intended victim against such danger.” Id., 131 Cal.Rptr. 14, 551 P.2d at 340.
The balance of policy considerations struck in those cases — between the danger of assault or injury to the public on the one hand, and treatment on the other hand — is struck differently from the criminal rehabilitation context. Compare Tarasoff, 131 Cal.Rptr. 14, 551 P.2d at 346-47 (tipping in favor of public safety over concerns related to confidentiality in treatment), with Beauchene, 151 Cal.Rptr. at 798-99 (tipping in favor of treatment and rehabilitation over public safety). “ ‘Duty’ is ‘an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection’ against the defendant’s conduct.” Beauchene, 151 Cal.Rptr. at 798 (quoting William L. Prosser, Torts (4th ed. 1971)); see also Tarasoff, 131 Cal.Rptr. 14, 551 P.2d at 342. The “sum total” of the considerations in the criminal rehabilitation context is simply different from the calculus in the cases on which the dissent would have us rely.
Because a private individual in like circumstances would not be liable under California law, the United States cannot be held liable under the FTCA for the conduct of the parole officer here.
III. CONCLUSION
“Each member of the general public who chances to come into contact with a parolee or probationer must risk that the rehabilitative effort will fail.” Beauchene, 151 *922 Cal.Rptr. at 799. Despite this increased danger, rehabilitation is an endeavor the State of California values. Unless we adopt a “throw away the key” approach to convicts, tragic crimes by parolees and probationers inevitably will occur. No judge wants to deny Dugard relief, but the FTCA, through the lens of California law and its focus on rehabilitative efforts, does not permit relief under the circumstances here.
AFFIRMED.

. The Sentencing Reform Act of 1984 abolished parole for all crimes committed after November 1, 1987. See Marsh v. Taylor, 925 F.2d 1131, 1132 (9th Cir. 1991); see also Fassler v. U.S. Parole Comm’n, 964 F.2d 877, 878 (9th Cir. 1991); Farese v. Story, 823 F.2d 975, 976-77 (6th Cir. 1987) (per curiam). Prior to that, the Parole Commission determined if and when a prisoner could be released on parole, and then ultimately decided if a parolees’ performance outside warranted a return to prison. Post-incarceration supervision of federal offenders now takes the form of “supervised release,” with district judges ultimately monitoring the performance of offenders with the assistance of federal probation officers.

. Garrido had also been prohibited from travel to Lake Tahoe as a condition of his parole.

. The Honorable Carlos T. Bea, United States Circuit Judge for the Ninth Circuit, sat by designation as the district court judge, pursuant to 28 U.S.C. § 291(b).

. Only Jaycee and A. Dugard remain as plaintiffs (we will refer to them collectively as “Dugard”). G. Dugard voluntarily dismissed her claims.

.The government also argued that there were two additional bases on which it would prevail: (1) that the discretionary function exception bars Dugard’s claims; and (2) that the parole officer’s failure to follow mandatory duties did not proximately cause plaintiffs’ injuries. Because we agree with the district court that the government faces no liability under the FTCA, we need not address the discretionary function exception or proximate cause issues here.

. The relevant statutory provision states:
Neither a public entity nor a public employee is liable for:
(a) Any injury resulting from determining whether to parole or release a prisoner or from determining the terms and conditions of his parole or release or from determining whether to revoke his parole or release.
(b) Any injury caused by:
(1) An escaping or escaped prisoner;
(2) An escaping or escaped arrested person; or
(3) A person resisting arrest.
Cal. Gov. Code. § 845.8.